UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**BRANDI ROTSELL,**

                        **Plaintiff,**

             **-v-**                          **6:15-CV-943**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Steven R. Dolson, Esq.
Law Offices of Steven R. Dolson
126 North Salina Street, Suite 3B
Syracuse, NY 13202
Attorney for Plaintiff

Lauren E. Myers, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On June 14, 2012, plaintiff protectively filed an application for disability insurance benefits, alleging an onset date of January 1, 2007 due to disorders of the cervical and lumbar spine and anxiety with depression. The application was initially denied on November 2, 2012. Thereafter, plaintiff filed a request for a hearing, and a hearing was held on October 18, 2013. Administrative Law Judge Mary Withum issued an unfavorable determination on the claim. The Appeals Council extended plaintiff's date last insured to December 31, 2012, and otherwise

adopted ALJ Withum's decision. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 16). For the reasons set forth below, the court concludes that the Commissioner's decision should be reversed and the matter remanded for further proceedings.

## DISCUSSION

### A. Legal Standard

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the

-2-

factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

First the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 57). The ALJ then concluded that plaintiff's degenerative disc disease and depression were "severe impairments." (Tr. 57-58). The ALJ concluded that plaintiff's degenerative disc disease did not meet listing 1.04 for disorders of the spine, and that her mental impairments did not meet or medically equal the criteria of listing 12.04. (Tr. 58-59).

Next, the ALJ discussed the evidence and found that plaintiff had "the residual functional capacity to perform sedentary work . . . except that [she] could never climb ladders, ropes, or scaffolds, and must avoid all exposure to unprotected heights . . . [and] could only occasionally stoop, crouch, kneel, and crawl." (Tr. 60). The ALJ further found that plaintiff must avoid concentrated exposure to poorly ventilated areas, and environmental irritants such as fumes, odors, dusts, and gases. (Tr. 60). Plaintiff's work was further "limited to simple, routine, and repetitive tasks. She could frequently interact with the public, co-workers, and supervisors." (Tr. 60).

The ALJ explained that although plaintiff testified that she is in constant pain that has not been relieved by surgery, nerve block injections, chiropractic treatment, or medications, and that she could only walk or stand for about five to ten minutes at a time, imaging indicated only mild

-3-

abnormalities. The ALJ further stated that after plaintiff's L3 to L5 fusion surgery in January 2008, examinations performed October 2008, April 2009, and April 2010 indicated full strength, a normal gait, and normal reflexes. (Tr. 61). The ALJ discussed imaging evidence that "indicated a stable fusion and some other mild degenerative changes," an April 2012 MRI that indicated normal alignment other than mild facet changes at the L2-L3 disc level, an April 2010 electromyogram that indicated very mild L4-L5 radiculopathy, and a February 2011 electromyogram that did not show any neuropathy. (Tr. 61). The ALJ concluded that "when considering all the evidence before claimant's date last insured, because the claimant had good functioning, and limited abnormalities per imaging, the claimant was able to perform sedentary work, with occasional postural activities." (Tr. 61).

With respect to plaintiff's mental impairments, the ALJ observed that she did not have any notable treatment prior to her date last insured. (Tr. 61). The ALJ also noted that at her consultative psychological exam, plaintiff was able to maintain focused eye contact, and did well in cognitive testing. (Tr. 62). The ALJ therefore concluded that "because the claimant had good functioning and limited treatment prior to her date last insured, the claimant could perform unskilled work, with frequent interactions with others." (Tr. 62).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 62). The ALJ discussed the opinion evidence, stating that "consultative examiner Dr. Pamela Tabb M.D., examining physician Dr. Eduardo Alvarez M.D., examining physician Dr. Wayne Kerness M.D., and examining physician Dr. Barry Katzman M.D. indicated the claimant could perform at least

sedentary, if not light, or medium work." (Tr. 63). The ALJ determined that these findings were supported by recent examinations, by prior examinations that "consistently indicated the claimant had a normal gait, normal muscle strength, normal reflexes, and normal sensations," and by post-surgical imaging, and therefore granted their findings significant weight. (Tr. 63). Discussing the opinion of treating physician Dr. Sajid Khan, the ALJ concluded that his opinion that plaintiff could not do any type of work was not persuasive, explaining that he appeared to rely entirely on the subjective reports of plaintiff, his examination findings indicated full strength, a normal gait, and normal reflexes, and noting that his answers are very short and limited and provided no causal connection. The ALJ therefore assigned this opinion little to no weight. (Tr. 63). The ALJ similarly assigned the opinion of Dr. Vivienne Taylor that plaintiff was limited to less than sedentary work little to no weight stating that her opinion "is not persuasive" and is "not relevant" since she only began treating plaintiff after her date last insured. The ALJ also assigned little to no weight to the opinion of chiropractor Mark Anken because he "is not an acceptable medical source" and his opinion is unsupported as is the opinion of Dr. Khan. The ALJ granted the opinions relating to plaintiff's mental impairments great weight. (Tr. 63).

The ALJ then found that plaintiff was unable to perform her past relevant work, but, after consulting a vocational expert found that she could perform other work that existed in significant numbers in the national economy, and therefore, a finding of not disabled was appropriate. (Tr. 64-65).

**C. Issues In Contention**

Plaintiff argues that the ALJ erred by failing to properly apply the treating physician rule;

and by failing to properly weigh and explain the opinion evidence.

**D.     Analysis**

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and

extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

After a thorough review of the medical evidence in the record, the Court concludes that the matter should be remanded for a more detailed analysis of the opinion evidence, including that of the treating physician Dr. Khan.[1] The ALJ appears to focus on a few relatively normal findings in determining what weight to give the varying medical opinions. It is unclear whether the ALJ also considered the findings that supported plaintiff's claims, and found them to be less persuasive, or if the ALJ did not consider these findings. When discussing the opinion of Dr. Khan, the ALJ concluded that he relied "entirely on the subjective reports of the claimant" pointing out that an electromyogram, showed only mild radiculopathy and that his examination indicated full strength, a normal gait, and normal reflexes. The Court notes that many of the records from Slocum-Dickson Medical Group, from both Dr. Khan and other providers, while showing normal gait and normal reflexes, also noted that range of motion was limited with pain, that the Patrick's test revealed pain at the lower lumbar spine area, and that the lumbar facet loading test was positive bilaterally. (*See, e.g.,* Tr. 251-53, 241). The ALJ also failed to discuss Dr. Khan's opinion that plaintiff could work no more than 15-20 hours per week. (Tr. 401).

Plaintiff further argues that the ALJ erred by not further explaining the four medical

---

[1] The Court does agree with the Commissioner that Dr. Khan's statements that plaintiff could not do any type of work are not entitled to any special weight, as the issue of plaintiff's ability to work is an issue reserved to the Commissioner.

opinions that were given "significant weight," instead simply stating broadly that they indicated that plaintiff "could perform at least sedentary work, if not light or medium work." The Court agrees. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves siting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). As plaintiff observes, "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base . . . but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-6p.

As with the analysis of Dr. Khan's opinion, the ALJ points to the mild abnormalities in imaging and to normal gait, strength, and reflexes in examinations in support of the conclusion that plaintiff can perform sedentary work. However, despite stating that all four of these opinions which were given significant weight indicated that plaintiff could perform at least sedentary work, the ALJ did not discuss the fact that both Dr. Kerness and Dr. Katzman found that plaintiff could not bend. (Tr. 731, 736). Dr. Katzman also noted a limited range of motion. Dr. Alvarez, despite his conclusion that plaintiff was able to return to work with restrictions exerting up to 10 pounds of force occasionally in holding, lifting, pushing and pulling and with an inability to perform any repetitive or sustained bending, lifting and twisting motions of the lower back, also noted that her

-8-

gait was slow and guarded, that she was unable to sit comfortably on the chair, that she experienced pain when standing on her heels and toes, that her range of motion was decreased, and that she declined to cough because of expected severe back pain. (Tr. 718-23). The ALJ also failed to discuss the opinion of Dr. Gerald Coniglio who similarly found that plaintiff could not kneel, bend, climb, or squat. (Tr. 740).

Other evidence in the record also demonstrates limited motor strength in the lower extremities due to pain and an inability to walk on heels and tip toes. (Tr. 223-26).[2] The Court also notes that although the ALJ states that "recent 2012 treatment records indicated treatment for benign conditions such as routine gynecological check-ups, or rash treatment," the notes of these visits observe that plaintiff walked with a limping gait, that she had difficulty getting on and off the exam table, that she had difficulty laying down, that she needed assistance to get on and off the exam table and to get up from a supine to a sitting position." (Tr. 836). As noted by plaintiff, the ALJ may not selectively review evidence and then use only the selected evidence as a basis to discount a treating physician's opinion. (Dkt. No. 12 at 7) (citing *Tim v. Colvin*, 2014 WL 838080 (N.D.N.Y. Mar. 2014)).

Consequently, the Court concludes that the matter should be remanded for further consideration of the opinion evidence.

**CONCLUSION**

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16)

---

[2] The Court also notes that throughout the years of medical evidence in the record, plaintiff's complaints of pain, and inability to perform many of her activities of daily living remained consistent, including complaints that her pain was exacerbated by sitting and prolonged standing.

is DENIED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED; and it is further

ORDERED that the matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Date:   September 30, 2016

Norman A. Mordue
Senior U.S. District Judge